# BARBOUR *v.* MOORE.

WILLS; EJECTMENT; PRESUMPTIONS; LAPSE OF TIME; PLEADING AND PRACTICE; UNDUE INFLUENCE; MENTAL CAPACITY; APPELLATE PRACTICE; REVERSIBLE ERROR; EVIDENCE.

1.  Where in an action of ejectment the issue turns upon the validity of a will which is attacked by the plaintiffs upon the ground of the mental incapacity of the testator and the exercise of un_ due influence upon him, a wider range of evidence is necessitated than is usual in ordinary trials; *following* Olmstead *v.* Webb, 5 App. D. C. 38.

2.  If the failure of a testator to amend or cancel his will during seven years which elapsed between its execution and his death, raises a presumption that the will was freely made which it is specially incumbent upon the parties attacking the will to overcome, such presumption is overcome by testimony showing that the will did not remain in the testator's possession but passed into that of the defendant's husband, and the failure of the testimony to show that the testator's attention was called

    to the making of this or any other will or that he remembered making one at all.

3. Lapse of time short of the period of limitations is of no avail as a defence in an action of ejectment.

4. While a long lapse of time between the death of a testator and the attack upon his will by his heirs at law might often be a reasonable and weighty circumstance for the consideration of the jury in a particular case, it can only be so in the absence of explanation, and a sufficient explanation is afforded by evidence showing the infancy and poverty of the heirs and the inebriety of their father.

5. The rule as to the duty of a trial court in respect of the submission of the evidence in a given case to the determination of the jury, announced in Adams *v.* Railroad, 9 App. D. C. 26, *affirmed.*

6. Under the Seventh Amendment to the Constitution, courts of the United States have no power on appeal to review questions of fact.

7. In a suit at law involving the validity of a will, attacked because of the alleged mental incapacity of the testator and the exercise of undue influence upon him, evidence is competent which shows what the situation in life and condition were of those who would naturally have been the objects of his bounty; and the fact that the recital of such facts might unduly excite the sympathies of the jury cannot be held to effect the competency of the testimony.

8. Error in the admission of evidence will not justify the reversal of a judgment where no injury could reasonably have resulted from it.

9. Where one of the circumstances in a will contest is the place of execution of a will and its custody thereafter, the testimony of a subscribing witness who recognized his signature and those of the two other witnesses but had no recollection of the actual signing or of acquaintance with the testator, that he never witnessed a will outside of his bank, is competent.

10. In such a case, where one of the contentions is the exercise of undue influence by the defendants upon the testator and stress is laid by the defendants upon the long delay which ensued between the making of the will and the death of the testator, during which time he might have modified or revoked his will, testimony offered by the plaintiffs showing that when the will was filed in the Orphans' Court it was contained in an envelope with an indorsement thereon in the handwriting of one of the defendants, is competent.

11. Where in such a case it is shown that one of the defendants collected rents for the testator for a number of years, and an account between him and the testator taken from the books of

the firm of which such defendant was a member has been offered in evidence, the books of accounts current between such firm and strangers to the suit, to show that the firm had acted as bankers and agents for friends and customers, are not admissible in evidence.

No. 578.  Submitted December 2, 1896.  Decided January 4, 1897.

HEARING on an appeal by the defendant from a judgment on verdict in an action of ejectment.  *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. J. M. Wilson, Mr. Henry Wise Garnett* and *Mr. R. Ross Perry* for the appellants:

1. It was the duty of the court below to instruct the jury that upon the whole evidence their verdict should be for the defendant.  Counsel appreciate the position which they must assume in order to sustain this contention.  The old rule upon this subject is clearly stated in the case of *Richardson* v. *Boston*, 19 How. 263, 269.  The existing rule upon the same subject is well expressed by Mr. Justice Gray, delivering the unanimous opinion of the Supreme Court in the case of *Randall* v. *Railroad Co.*, 109 U. S. 478, 482.  In the recent case of *Adams* v. *Railroad Co.*, 8 App. D. C. 26, this court reviews the decisions of the Supreme Court upon this point.

What is sufficient evidence to support a verdict may be expressed in the following simple language: It is such a preponderance of competent evidence as will compel an impartial and reasonable man to decide in accordance therewith.  In the present case the preponderance of evidence in favor of the validity of David Moore's will was so great and overwhelming that no reasonable and impartial man could upon the evidence only have found against such validity. It may be urged that two successive juries have found against the validity of this will, and that two successive trial justices have refused to disturb such findings; that therefore it must be assumed that a reasonable man could find against such validity.  This suggestion renders it proper to carefully con-

sider the force given to the finding of a jury.   In ejectment cases, under the common law practice a trial of title to land was never permitted to be settled by the verdict of one jury. In fact, the trial could be repeated indefinitely at law.   Equity intervened after five verdicts to enjoin endless litigation. *Earl of Bath* v. *Sherwin*, Prec. Ch. 261; Gilbert's Eq. Rep. 2; 4 Brown's P. C. 373; *Pemberton* v. *Pemberton*, 13 Vesey, 290. Even now, when fictions have been abolished and the action of ejectment stands upon the same plane as other actions, courts are particularly favorable to the granting of new trials in such actions.   *Newell* v. *Sanford*, 10 Iowa, 396; *White* v. *Poorman*, 24 Iowa, 108; *Jackson* v. *Dickinson*, 15 Johns. 309; *Jackson* v. *Laird*, 8 Johns. 489; *Clayton* v. *Yarrington*, 33 Barb. 144.   Where there is a mere conflict of evidence it is admitted that the rule laid down by the Supreme Court in *Railroad Co.* v. *Woodson*, 134 U. S. 623, is a wise and correct one.   Courts however, of the highest authority have declared that even after two verdicts new trials should be granted if justice require it.   *Chambers* v. *Collier*, 4 Ga. 193; *Trustees* v. *Broadfield*, 30 Ga. 1; *Comm.* v. *Ross*, 3 Binney, 520; *Wilkie* v. *Roosevelt*, 3 Johns. Cases, 206; *Stamps* v. *Bush*, 7 How. (Miss.) 255; *Frost* v. *Brown*, 2 Bay (S. C.), 133; *Clark* v. *Jenkins*, 162 Mass. 397; *Hodge* v. *Railroad Co.*, 56 F. R. 195; *Missouri* v. *Brewing Co.*, 36 Mo. App. 425.   Where juries persist in disregarding the instructions of the court, new trials will be granted until a verdict in accordance with such instructions is rendered, no matter how many fruitless efforts may be required before that result is reached.   *South Carolina Bank* v. *Bobo*, 13 Rich. 4.

The rule with respect to the presumption arising from two or more similar verdicts applies only when such verdicts have been rendered upon substantially the same facts and under the same circumstances.   Where a verdict has been rendered by one jury under erroneous instructions, and when a new trial has been granted by the appellate court on account of such error, it cannot be said that another verdict rendered

10 Ct. App.—4

under different instructions is technically a second verdict'
nor can it be said that a verdict rendered at a second trial,
upon evidence different both as to character and amount
from that adduced upon a first trial is technically a sec-
ond trial.   *Milliken* v. *Ross*, 4 Woods, 69.

2. The question as to what constitutes testamentary ca-
pacity in this District is so well settled by decisions of
the Court of Appeals of Maryland and of the Supreme
Court of the United States that counsel will not quote other
authority upon this point than the former decision of
this court in this case.   It is not a question here as to
whether or not David Moore was a perfectly sane
man.   In *District of Columbia* v. *Armes*, 107 U. S. 520,
the Supreme Court unanimously held that a person ac-
tually afflicted with insanity is admissible as a witness
if it appears to the court upon examining him and
competent witnesses that he has sufficient understanding to
comprehend the obligation of an oath and to be capable of
giving a correct account of the matters which he has seen
or heard in reference to the questions at issue.   Similarly
in point are the very many cases establishing that insane
delusions do not destroy testamentary capacity unless they
exist with respect to the testator's property or the natural
objects of his bounty, or in some way directly affect his tes-
tamentary capacity.   From the leading case of *Dew* v. *Clark*,
3 Addams, 79, down to the very recent cases of *In re Cline's
Will*, 24 Oregon, 175; *Taylor* v. *Trich*, 165 Pa. State, 586,
and *Brown* v. *Ward*, 53 Md. 376, all are in accord on this
point.

In this District the criterion of such capacity is ability
to execute a valid deed or contract.   The equivalent of
such expression is " sound and disposing mind."

The only point of inquiry, therefore, is whether or not
such incidents as are testified to by the plaintiffs' witnesses
are consistent with the existence of this ability to execute a
valid deed or contract.   At the outset it must be said that

the law, in the face of such testimony as has been given
by the defendant's witnesses, independently of its presump-
tion of capacity, would interpret the instances given by the
plaintiffs' witnesses in such wise as, if possible, to accord
with the position established by the defendant's testimony.
The well established law with respect to the existence of
eccentricity, excitability, peculiarity, and other qualities or
defects, as impairing testamentary capacity, is shown by an
examination of the following cases: *In re Jones Will,* 25
N. Y. S. 109; *Bennett* v. *Hibbard,* 55 N. W. 93; *Rarick* v.
*Ulmer,* 42 N. E. 1099; *Best* v. *Hoyle,* 12 S. W. 762; *Whipple*
v. *Eddy,* 43 N. E. 789; *Appeal of Hull,* 19 Atl. 352; *In re
Cox Estate,* 167 Pa. St. 501.

That the mere expression of opinion of non-expert wit-
nesses is of any importance independently of the facts upon
which it is based is so well-settled law that authorities will
not be quoted in support of it.  Counsel call attention to
the following cases, which were quoted in the former brief
and which seem especially strong and apposite: *Lee* v. *Lee,*
4 McCord (S. C.) L. 183; *Leeper* v. *Taylor,* 47 Ala. 224;
*McMasters* v. *Blair,* 29 Pa. St. (5 Casey) 304; *Cauffman* v.
*Long,* 82 Pa. St. 77–80.

In this jurisdiction, however, the unanimous opinion of
the Supreme Court in *Conley* v. *Nailor,* 118 U. S. 127, is of
itself the completest answer to the plaintiffs' claim.  It is
true that was an equity case in which the nine Supreme
Court judges were sitting as jurymen, but this fact does not
destroy the potency of the other fact that nine men unani-
mously pronounced testimony far stronger against the
mental capacity of Nailor than is here adduced against that
of David Moore, insufficient to overthrow general testimony
with respect to Nailor's mental capacity.  If the facts in
this case of *Conley* v. *Nailor,* arguing incapacity from a
depraved life and vile language, are examined by the
court, it will be seen that David Moore was not nearly so
gross and abandoned as was the testator in that case.  It

should seem, if *Conley* v. *Nailor* establishes the law of this jurisdiction, that the trial justice should not have allowed the question of David Moore's testamentary capacity to go to the jury.

3. It is well established law that undue influence in order to avoid a will must not only amount to force or coercion, destroying free agency, but it must operate at the time when the instrument was made. It must be a present constraint, operating upon the mind of the testator in the very act of making the instrument. *Eckert* v. *Flowry*, 43 Pa. St. 51, 52; *McMahon* v. *Ryon*, 20 Pa. St. 331; *Woodward* v. *James*, 3 Strob. (S. C.) L. 553 to 556; *Mintzer* v. *Baker*, 5 Phil. (Pa.) 456, 457, 458; *Will of Shaw*, 11 Phil. (Pa.) 52, 53. Undue influence, to avoid a will, must be exercised for the purpose of procuring it, the particular will, and must be directly connected with its execution, and must not be a mere general influence. *Tyson* v. *Tyson*, 37 Md. 581 to 592; *McCulloch* v. *Campbell*, 49 Ark. 371.

Where, as in the case at bar, any considerable time has intervened between the execution of a will and the testator's death, it is hard to imagine that undue influence could have continued all the while. *Hoshauer* v. *Hoshauer*, 26 Pa. St. 406, 407; *Mintzer* v. *Baker*, 5 Phil. (Pa.) 458. It is well settled law that, however great the influence resulting from kindness and affection and from family and social relations may be, it has no taint of unlawfulness in it and there will be no presumption of its actual unlawful exercise merely from the fact that it is known to have existed or even from the fact that it has manifestly operated on the testator's mind as a reason for his testamentary dispositions. *Mintzer* v. *Baker*, 5 Phil. (Pa.) 457 to 458; *Leeper* v. *Taylor*, 47 Ala. 222 to 225. An allegation of undue influence should be proved, so that the judges of fact, having proper conceptions of what undue influence is, may perceive by whom and in what way it has been exerted. *Means* v. *Means*, 5 Strob. (S. C.) L. 190 to 195. There is absolutely nothing about

the drawing of the will or its execution to indicate undue influence by any one. There is not a word of proof to show that either Mr. or Mrs. Barbour ever made any suggestion as to this will; ever importuned or even spoke to the testator about it or had anything whatever to do with the drawing of this will or with its execution. It appears by the proof to have been the testator's own free and voluntary act; that it was taken by the testator himself to the Bank of Washington to be executed, and that the testator himself, in the absence of every one except the witnesses of his own selection, saw to its due execution. So far as the proof shows, he sought Mr. Hanna, the attorney who drew the will, voluntarily.

Undue influence to avoid a will must amount to force or coercion destroying free agency. *Conley* v. *Nailor*, 118 U. S. 134, 135; *Williams* v. *Goude*, 1 Hagg. Eccl. 596; *Gardner* v. *Gardner*, 22 Wend. (N. Y.) 540; *Eckert* v. *Flowry*, 43 Pa. St. 51, 52; *Leeper* v. *Taylor*, 47 Ala. 222 to 225; *Elliott's Will*, 2 J. J. Marsh (Ky.) 342, 343; *Eckert* v. *Flowry*, 43 Pa. St. 51, 52. It is unnecessary to cite authorities upon this point, for it is now well settled that the fact of testator's son or son-in-law attending to his general business affairs before and after the execution of the will is no evidence of undue influence, even though he is a beneficiary under the will.

Where the husband of the principal beneficiary occupied a confidential relation to the testator the court held that undue influence was not established. *Bristed* v. *Weeks*, 5 Redf. (N. Y.) 532. Indeed, the doctrine of confidential relations adopted in courts of equity as to gifts and contracts *inter vivos* has no application to the case at bar. *Tyson* v. *Tyson*, 37 Md. 583; *Eckert* v. *Flowry*, 43 Pa. St. 51.

Upon the question of testamentary capacity counsel have quoted as most apposite the decision of the Supreme Court in the case of *Conley* v. *Nailor*. It would seem to be decisive upon that point. Another in point upon the question of undue influence, although, indeed, *Conley* v. *Nailor* is

strongly applicable in that respect also, is the comparatively recent case of *Mackall* v. *Mackall*, 135 U. S. 167.

Upon these authorities it was error to submit to the jury the question as to David Moore's capacity to make a will, and also the question as to whether or not undue influence had been practiced upon him in respect to the procuring of his will. It has been often ruled to be error to submit a question of fact to the jury of which there is no evidence. *Startwell* v. *Wilcox*, 20 Pa. St. 123; *Silven's Exrs.* v. *Porter,* 74 Pa. St. 451; *Lawer* v. *Clement*, 25 Pa. St. 68; *Cauffman* v. *Long*, 82 Pa. St. 80; *Tyson* v. *Tyson*, 37 Md. 581.

4. If the court should be of opinion that the evidence upon either incapacity or undue influence was so over-whelming that the case should not have been submitted to the jury upon that point, a new trial should be had for the reason that it cannot be assumed that the verdict was not influenced by the testimony erroneously admitted and the instructions given upon that point. In the case at bar only a general verdict could be given. In support of this contention counsel submit the following points and authorities:

A general verdict is that by which the jury pronounces generally upon any or all of the issues either in favor of the plaintiff or defendant. Bouvier's Law Dictionary; Co. Litt. 288; 4 Bl. Comm. 360.

If the weight of evidence on any point essential to sustain the verdict is clearly against the verdict, a new trial should be granted. *Lyle* v. *Robbins*, 25 Cal. 437 ; *Johnson* v. *Burns*, 29 Kansas, 81; *Chesley* v. *King*, 74 Me. 164; *Mitchell* v. *Brown*, 88 N. Car. 156; *Cattle* v. *Morris*, 57 Cal. 317; *Perkins* v. *Trinker*, 30 Minn. 241.

A judgment will be reversed for error unless shown beyond doubt that it did not and could not prejudice appellant. *Deary* v. *Cray*, 5 Wall. 795; *Moores* v. *Nat. Bank*, 104 U. S. 625, 631; *Gilmer* v. *Higley*, 110 U. S. 47, 50 ; *Smiths* v. *Shoemaker*, 17 Wall. 630, 639; *Railroad Co.* v. *O'Brian*, 119 U. S. 99, 103.

The following authorities are to the effect that where several issues are submitted and a general verdict rendered the legal inference is that all the issues have been found in favor of the prevailing party : *Allard* v. *Hamilton*, 58 N. H. 416; *Hill* v. *Pine River Bank*, 45 N. H. 300; *Carroll* v. *Graham,* 8 R. I. 242; *Burdick* v. *Burdick*, 15 R. I. 165; *Lovel* v. *State*, 45 Ind. 550; *Eldridge* v. *State*, 37 Ohio St. 191; *State* v. *Tuller*, 34 Conn. 280; *State* v. *Bean*, 21 Mo. 269; *Moody* v. *State*, 1 W. Va. 337; *Rhoads* v. *Metropolis*, 36 Ill. App. 123; *Worford* v. *Isbel*, 1 Bibb. 247; *Sheldon* v. *Edwards*, 35 N. Y. 279; *White* v. *Simonds*, 33 Vt. 178.

This applies as well to several issues or grounds of action or defence in one count. *Moores* v. *Nat. Bank*, 104 U. S. 625, 631.

If the finding with respect to either undue influence or want of capacity could have been and probably was improperly influenced by evidence and instructions erroneously addressed to the jury as to the other of said issues, then such error has been material and harmful.

5. The trial justice erred in permitting the witness, Sarah C. Moore, to testify with respect to her condition in life and her occupation in the fall of 1875, shortly prior to the date of the making of the will in question, and also to testify upon the same points with respect to her daughter, Sarah M. Davidson, one of the plaintiffs. At that time and for years after David Moore's death the plaintiffs were not his next of kin. Their mother, the witness in question, never was. Their situation in life and David Moore's knowledge of it and feeling with respect to them were irrelevant. It is well settled that even an insane delusion with respect to a person who does not stand in the position of heir-at-law or next of kin at the time the will is made does not at all affect the validity of the will. *A fortiori*, dislikes, prejudices, want of feeling, all or any of these on the part of the testator with respect to such persons are absolutely irrelevant. A delusion as to a particular person who might expect a

legacy but has no interest in having the will set aside is no sufficient objection to the testator's capacity. *Stackhouse* v. *Horton,* 15 N. J. Eq. 202; *Cleveland* v. *Lyne,* 5 Bush, 383; see also, *Brace* v. *Black,* 125 Ill. 33.

6. The court erred in permitting the plaintiffs to give in evidence to the jury the fact that the words "Property of David Moore," indorsed upon the envelope which contained his will when it was first presented in the office of the Register of Wills, were in the handwriting of James L. Barbour. Even had the testimony showed that David Moore confided his will for safe keeping to the executor named therein, this would have been an irrelevant fact on the question of undue influence. It is a usual and proper thing for a banker or other person having a safe to have the custody of such instruments. Having such custody, the indorsement upon the envelope that the inclosure is the property of David Moore is irrelevant. The objection is that by his emphasizing this piece of irrelevant evidence the trial justice erred to the manifest prejudice of the defendant.

7. One of the strongest grounds urged by the plaintiffs against the will in question was its unnaturalness. It was said that the fact that David Moore, having property of great value, gave it all to his daughter was, in the highest degree, unnatural. Consequently, the value of the property in question had a most important effect upon the minds of the jury. The court will understand that had this property remained at the value that it had in 1876, or even in 1883, this ejectment suit never would have been brought. Its greatly enhanced value has created this suit. To permit testimony with respect to what lots in these subdivisions were worth was to set up a standard of value for the jury in estimating the value of David Moore's twenty-nine acres, which was absolutely misleading. Upon this point counsel refer to the following authorities: *Railroad Co.* v. *Splittog,* 25 Pac. R. 202; *Railroad Co.* v. *Stocker,* 18 Atl. 399; *Chan-*

*dler* v. *Aqueduct Co.,* 122 Mass. 305; *In re Thompson,* 5 N. Y. S. 370; *Everett* v. *Railroad Co.,* 59 Iowa, 243.

*Mr. A. S. Worthington* and *Mr. W. L. Cole* for the appellees:

1. Where there has been a verdict of a jury, and a motion for a new trial has been overruled by the presiding justice and judgment entered on the verdict, this court in reviewing the case on appeal is confined to the examination of questions of law and may not grant a new trial on account of supposed preponderance of evidence, however great, in favor of the unsuccessful party. *Insurance Co.* v. *Ruden's Admr.,* 6 Cr. 340; *Crane* v. *Morris' Lessees,* 6 Pet. 608; *Greenleaf* v. *Birth,* 9 Pet· 298; *C. & O. Co.* v. *Knapp,* 9 Pet. 567; *Ewing* v. *Burnett,* 11 Pet. 50; *United States* v. *Laub,* 12 Pet. 4; *Bank* v. *Guttschlick,* 14 Pet. 30; *Barreda* v. *Silsbee,* 21 How. 166; *Schuchardt* v. *Allens,* 1 Wall. 370; *Gregg* v. *Moss,* 14 Wall. 569; *Pleasants* v. *Fant,* 22 Wall. 122; *Baylis* v. *Insurance Co.,* 113 U. S. 320; *Railroad Co.* v. *Moore,* 121 U. S. 572; *Russell* v. *Post,* 138 U. S. 429; *Insurance Co.* v. *Ward,* 140 U. S. 88; *Hedden* v. *Iselin,* 142 U. S. 679.

2. The fact that each of two successive juries, upon substantially the same evidence, have rendered a verdict in favor of the plaintiffs, and that the presiding justice at each trial overruled the motion for a new trial, is entitled to great weight in this court.

In the brief on behalf of the appellant it seems to be urged that the action of ejectment is an exception to this rule. This we deny. We think it needs no citation of authorities to satisfy the court that at this day the action of ejectment in this regard stands upon precisely the same footing as any other action. Even the old authorities referred to by counsel on the other side do not support their contention.

But above and beyond all this, this very court at the former hearing decided that upon the evidence at the first trial it was the duty of the court to submit the case to the

jury. This was expressly held as to the issue of undue influence, and it was held by necessary implication as to the issue of mental capacity. As this court became familiar with the evidence at the first trial in the voluminous record which was brought here on the first appeal, it will see from inspection of that record that there is no substantial difference in the evidence at the two trials—the principal difference in the two records being that the last one contains considerable cumulative evidence on both sides. In the legal aspect of the case in which we are now considering it, there is no change whatever. We submit, therefore, that this question is *res judicata*—that the decision of this court when the case was here before is binding upon it now. *Holcomb* v. *Dearing*, 8 App. D. C. 298.

3. Even if this court had power in jury cases to pass upon questions involving disputed facts and the credibility of witnesses, this judgment should stand, because the weight of the evidence in this case was not "overwhelmingly" in favor of the appellant. On the contrary, the preponderance was the other way.

4. *Undue influence.* At this trial, as at the former trial, to quote from the opinion of this court when the case was here before, "There were many facts and circumstances in proof to be considered by the jury as reflecting upon this question. The court would not have been justified in withdrawing those facts and circumstances from the consideration of the jury." See also opinion of this court in *Olmstead* v. *Webb*, 5 App. D. C. 38, and also in this connection the following cases decided by the Supreme Court of the United States: *The Slavers* (*Reindeer*), 2 Wall. 401; *Kempner* v. *Churchill*, 8 Wall. 369; *Castle* v. *Bullard*, 23 How. 187.

We do not forget that the court below, without objection from us, instructed the jury that there was no evidence tending to show that the will in controversy was obtained by fraud as distinguished from undue influence. But undue influence is fraud. *Barbour* v. *Moore*, 4 App. D. C. 550.

And clearly the rules which govern the introduction of evidence to prove fraud generally will apply with great force to that species of fraud called undue influence. Of all frauds this is the most dangerous, the most insidious and the most difficult to prove by direct evidence. *Grove* v. *Spiker*, 72 Md. 301–302.

Much less evidence is required to establish undue influence where the testator is of weak mind than where he is of average intelligence. See *Reynolds* v. *Adams*, 90 Ill. 146.

We ask the careful attention of the court on this subject to the cases cited below. They have been carefully examined and they will demonstrate that it is the undisputed law in this country to-day that the existence of such relations as those which are shown in this case to have been held by James L. Barbour towards David Moore, in connection with the fact, which the evidence either established or tended to prove, that James L. Barbour and his family are, under the paper in controversy, the recipients of practically the entire estate of David Moore, and that James L. Barbour participated in the preparation of the paper, is evidence of the strongest character to be submitted to the jury as tending to show that the instrument was obtained by the use of undue influence exercised on the part of James L. Barbour towards the alleged testator. *Richmond's Appeal,* 59 Conn. 226; *Drake's Appeal,* 45 Conn. 1; *Gay* v. *Gillilan,* 92 Mo. 250; *Garvin's Admr.* v. *Williams,* 44 Mo. 465; *Greenfield's Case,* 2 Harris (Pa.) 489; *Beall* v. *Mann,* 5 Ga. 470; *Boyd* v. *Boyd,* 66 Pa. St. 283; *Moon* v. *Spier,* 80 Ala. 134; *Hartman* v. *Stickler,* 82 Va. 237; *Matter* v. *Blair,* 16 Daly, 544; *Waddington* v. *Buzby,* 43 N. J. Eq. 161–2; *Banta* v. *Willett,* 6 Demorest, 84; *Bridwell* v. *Swank,* 84 Mo. 468; *Delafield* v. *Parish,* 25 N. Y. 35; *St. Ledger's Appeal,* 34 Conn. 436, 439, 450.

5. Even if the plaintiffs had not made out a case sufficient to entitle them to go to the jury on the question either of mental capacity or of undue influence, the defendant was not entitled to have the case taken from the jury, because it

would still have been for the jury to say upon the evidence whether David Moore ever executed the will at all.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. This is the second appeal that has been prosecuted by the defendant in this action of ejectment brought against her to recover an undivided one-half of certain valuable lands in the District of Columbia. See *Barbour* v. *Moore,* 4 App. D. C. 535, where the history of the case is given.

The entire controversy turns upon the validity of the will of David Moore, under which appellant claims, that has been attacked for the want of capacity of the testator, and also as the product of undue influence exerted upon him.

On the first appeal the judgment was reversed for certain errors in the charge; but on the points raised in respect of the sufficiency of the evidence to require the submission of the issues to the jury, the decision was adverse to the appellant.

The sufficiency of the evidence on the separate issue of mental capacity was passed over without comment; but in respect of the issue of undue influence, upon which the stress of the argument had been laid, the Chief Justice, who delivered the opinion of the court, said: "We think the court below committed no error in refusing to instruct the jury that there was no evidence tending to show that the will had been obtained by means of undue influence. There were many facts and circumstances in proof to be considered by the jury as reflecting upon this question. The court would not have been justified in withdrawing those facts and circumstances from the consideration of the jury." 4 App. D. C. 553.

2. As the chief point of contention on this appeal, the argument has been mainly devoted to the tenth, eleventh and twelfth assignments of error that are founded on the refusal of certain special instructions, the purpose of which, expressed in varying forms, was to take the case from the

jury and compel a verdict for the defendant. In the language of counsel for appellant, on their brief: "The main point which counsel desire to present to the court at the outset is, that it was the duty of the court below to instruct the jury that upon the whole evidence their verdict should be for the defendant."

This raises two distinct questions: 1. Whether the evidence on behalf of the plaintiffs, considered by itself, was sufficient in law to justify its submission to the jury? 2. Whether the weight of all the evidence is so overwhelmingly in favor of the validity of the will that it lies within the power, and becomes the duty, of this court to reverse the judgment and set aside the verdict for that reason only?

3. The first of these questions ought to be regarded as settled, in so far as this court is concerned, unless there is some substantial difference between the proofs offered on the respective trials. *Gas Light Co.* v. *Eckloff*, 7 App. D. C. 372, 375.

A great part of the evidence introduced by the plaintiffs, in support of their attack upon the will, relates to certain habits and peculiar conduct of the testator during the later years of his long life, both before and after the execution of the said will. Nothing less than some necessity would justify the detail of these, and without them any statement of the evidence would be unsatisfactory and misleading. Consequently, seeing no useful purpose that must be subserved by a review of that evidence, we will not undertake the task.

The peculiar nature of the issues tendered necessitated a wider range of evidence than is usual in ordinary trials. *Olmstead* v. *Webb*, 5 App. D. C. 38, 49.

Proof of incapacity to make a will is not only largely dependent upon circumstantial evidence, but also upon the opinions of skilled and unskilled witnesses, familiar with the testator, whose intelligence, perceptions and opportunities for observation are often widely different.

Undue influence, too, is nearly always a matter of inference from facts and circumstances disclosed by the evidence of the conditions and surroundings of the parties, and cannot, in its legal sense, be defined and applied in one case so as to present an accurate measure for the determination of another. *Conley* v. *Nailor*, 118 U. S. 127, 133.

These facts and circumstances, and the inferences to be deduced therefrom, vary so with the character and publicity of the instrument, the motives operating upon the several parties, the surrounding circumstances of time, place and opportunity, and especially with the mental conditions of the persons influenced, that the conclusion in one case can rarely be taken as a safe guide for the decision of another. Each case must necessarily depend upon its own special and peculiar circumstances. Circumstances sufficient to show undue influence to the satisfaction of a discriminating mind in application to one transaction, may, to the same mind, appear trivial and inconsequential when applied to another. Sufficient mental capacity to make a valid will may be found to exist in a given case, and yet the mind may be enfeebled to such an extent that circumstances of no weight in the case of a strong intellect and will might nevertheless become of great importance in determining the question of its freedom of action. When, therefore, the two issues of mental capacity and undue influence are combined and interlocked, the difficulty of finding a correct standard of comparison and decision is greatly increased.

The difficulty is in a measure illustrated by one of the points made on the argument for the appellant. It has been contended that the failure of the testator to amend or cancel the will during the seven years that elapsed between its execution and his death, creates a strong presumption that the will was freely made, which it was specially incumbent upon the plaintiffs to overcome. Authorities are cited in support of the proposition, that a will which remained for two years subject to change or cancellation at the maker's

pleasure, could not be set aside upon proof of declarations of the testator subsequently made. Grant the application of the doctrine to the facts of the particular cases, and yet the lapse of seven years may not be of any special significance in the case at bar. If the doctrine is applicable at all to the special circumstances of this case it is shorn by them of its strength. Aside from the feeble memory and other conditions of mental unsoundness of the testator, as testified to by some witnesses for the plaintiffs, it appears with reasonable certainty that the will did not remain in his possession, but passed into that of the defendant's husband. There is nothing to show that the testator's attention was afterwards called to the making of this or any other will, or that he remembered having made one at all. How, then, can it be reasonably held that the mere existence of this will for seven years, uncancelled, ought to add any substantial weight to the presumption that the law itself attaches to all instruments, whose execution shall have been formally proved?

In this connection, also, it may be well to advert to another and similar point, that has been urged with much force and earnestness, in respect of plaintiffs' long delay in making their attack upon this will. The will was executed July 29, 1876; the testator died October 23, 1883; James Moore, son of the testator and father of plaintiffs, died July 11, 1886; and the first action was begun in April, 1890. Again, we are of the opinion that the jury might, without impropriety, have attached no weight to this great lapse of time between the execution of the will and the beginning of the action. From no point of view could the lapse of time between the execution of the will and the death of the testator cut any figure, for reasons that are obvious. Nor is this a suit in equity to set aside an established and effective instrument in which laches in its institution is sometimes a bar to all relief; but an action at law in which lapse of time, short of the period of limitations, is of no avail as a

defence. *Wehrman* v. *Conklin,* 155 U. S. 314, 326. Granting, however, that lapse of time in claiming against a will might often be a reasonable and weighty circumstance in the consideration of the jury in a particular case, it can only be so in the absence of explanation. In this case they might have found an explanation—at least, it was within their province also to find one if they could—in the evidence which showed that James Moore was, during the whole time, a hopeless inebriate, and that his children, of whom one only was a male, were young, very poor, and dependent upon their own exertions for means of support and education.

Without taking up in detail, for the reasons heretofore given, the very careful analysis of the evidence that has been made by the able counsel for the appellant, or considering separately the probative effect of each distinct head thereof, we think it sufficient to say that we cannot justify ourselves in holding that their combined effect might not have fairly led the jury to the conclusion that the will was not the act of a legally sound and uninfluenced mind. *Allore* v. *Jewell,* 94 U. S. 506, 508.

The duty of the trial judge, in respect of the submission of the evidence to the determination of the jury, has been many times discussed by this court. And the rule deduced from the decisions of the Supreme Court of the United States was attempted to be stated in the recent case of *Adams* v. *W. & G. R. Co.,* 9 App. D. C. 26, in the following words:

"It is the province of the jury to determine the credibility of the witnesses and the weight of the evidence under proper directions in respect to the principles of law applicable thereto, and the court is never justified in directing a verdict except in cases where, conceding the credibility of witnesses and giving full effect to every legitimate inference that may be deduced from their testimony, it is nevertheless plain that the party has not made out a case sufficient in law to entitle him to a verdict and judgment thereon.

Stated in many different ways, this, we think, is substantially the doctrine of the adjudged cases that control in this jurisdiction."

To the cases cited in that opinion in support of the foregoing may be added *Sparf* v. *Hansen,* 156 U. S. 51, 99; *T. P. R. Co.* v. *Gentry,* 163 U. S. 353, 365.

Assuming, then, the truth of all the facts introduced in evidence by the plaintiffs, without regard to the contradictions that may have been offered by the defendant, as we are bound to do in the consideration of the question, and finding, besides, no substantial difference between the proofs on this and on the first trial, we must hold now, as on the former appeal, that the court did not err in refusing the instructions to find for the defendant because of the insufficiency of the plaintiffs' evidence.

This conclusion is all the more satisfactory now, because the sufficiency of the testimony has again been approved by the verdict of another jury and the judgment of another justice of the trial court.    Courts expressly invested with the power to set aside verdicts because against the weight of the evidence, have always been very slow and careful of its exercise where there has been a second verdict.

4. This brings us to the second of the questions propounded above.

Conceding, for the sake of the argument, that the evidence offered by the defendant not only contradicts that of the plaintiffs in material particulars, but is also cogent on all points of contradiction, we, nevertheless, do not consider ourselves at liberty to bring their respective weights into comparison and to judge between them.

Notwithstanding the possible superiority of a court to a jury for the trial of issues like those presented in this case, and without regard to whether the finding of a court might have been different from the verdict of the jury, upon which we express no opinion, we must bear in mind that the trial has been in a court of common law, and that the verdict of

the jury can only be examined or reviewed according to the rules thereof.

Whilst in most—if not all—of the States of the Union the appellate courts have the right to review the facts as well as the law in all appeals, as if they were proceedings in equity, that power has been expressly denied to the courts of the United States by the Seventh Amendment to the Constitution, which declares that "no fact tried by a jury shall be otherwise examined in any court of the United States than according to the rules of the common law."

In all trials the jury are the exclusive judges of the credibility of the witnesses and the weight of their testimony, and must be left to the free exercise of their functions. *Ætna Life Ins. Co.* v. *Ward,* 140 U. S. 76, 88.

According to the rules of the common law, when a verdict has been returned it may be set aside by the trial judge, notwithstanding the sufficiency of the evidence of the successful party in point of law, if, in his judgment, the verdict was against the manifest weight of the evidence, or was, in other respects, manifestly improper or excessive. *Met. R. Co.* v. *Moore,* 121 U. S. 558, 569. And it is not only his right to do this, but his duty also. *Woods* v. *R. & D. R. Co.,* 1 App. D. C. 165, 169.

In the case of *Met. R. Co.* v. *Moore, supra,* the Supreme Court of the United States recognized the right of the General Term of the Supreme Court of the District of Columbia to consider the weight of the evidence on appeal from the special term from an order overruling a motion for new trial; but that right was based on the peculiar organization of that court, through which, though sitting in special and general terms, it is still but one court. Hence, it was said: "The appeal from the special to the general term is not an appeal from one court to another, but is simply a step in the progress of the cause during its pendency in the same court." 121 U. S., p. 573.

Whatever doubt might possibly have been raised by the

remark in that case that the practice of the State courts in reviewing verdicts is "perhaps forbidden" to the courts of the United States by the Seventh Amendment, has certainly been removed by the unmistakable language of later cases. *Wilson* v. *Everett,* 139 U. S. 616, 621; *Ætna Life Ins. Co.* v. *Ward,* 140 U. S. 76, 91. In this last case, the court said:

"It may be that if we were to usurp the functions of the jury and determine the weight to be given to the evidence, we might arrive at a different conclusion. But that is not our province on a writ of error. In such a case we are confined to the consideration of exceptions, taken at the trial to the admission or rejection of evidence, and to the charge of the court and its refusal to charge. We have no concern with questions of fact, or the weight to be given to the evidence which was properly admitted."

The many decisions of the Supreme Court of the United States that support this view, from the beginning, are given in their chronological order on the briefs for the appellees and need not be here cited.

5. The first and second assignments of error come next in the order of the argument.

Mrs. Sarah Moore, the mother of plaintiffs, was permitted to testify, over the objection of the defendant, that shortly before the date of the will she and one of her daughters, then fifteen years old, obtained positions in the Government service with small salaries. It seems to be conceded by the appellant that if plaintiffs' father had not then been alive, their situation as heirs-at-law and proper objects of the bounty of their grandfather, would have justified the admission of the evidence. Under all the circumstances of this case we think the evidence was admissible.

The deplorable condition of their father would naturally have directed the mind of the grandfather, if sound and unbiased, to the helpless condition of the children and suggested them as proper objects of his bounty in making a will; hence the conditions by which they were surrounded

constituted a proper circumstance to be considered by the jury under the limitations expressly imposed by the court in the admission of the evidence.   That the sympathies of the jury might have been unduly excited by the contrast between the conditions of the children of James Moore and of his sister, the defendant, is a circumstance that cannot affect the competency of the evidence.   Besides, these general conditions appear throughout the whole of the evidence, and could not have been kept from the knowledge of the jury.

There are other grounds, moreover, upon which the competency of this evidence may be upheld.

In the first place, the intemperance of James Moore and the anger and prejudice which his conduct created in the mind of the testator, have been relied on as strong circumstances tending to show, in rebuttal of the charge of undue influence, reasonable grounds for his exclusion from the benefits of the will.   It would seem, therefore, that the weight of these circumstances might be strengthened on the one hand or weakened on the other by proof of the conditions surrounding the children of James Moore, and the testator's knowledge thereof, as well as his relations with them.

In the second place, the conditions and surroundings of plaintiffs and of their father also were pertinent circumstances for the consideration of the jury in explanation of the long delay of attack upon the will.

6. The admission of evidence tending to show that James Moore returned in a sober condition from the testator's house during his last illness, has been made the foundation of the third assignment of error.   This evidence seems to have been offered to rebut certain evidence to the effect that he was at the house of the testator during his last illness, and wholly unable to do anything for him by reason of intoxication.   We think the testimony was not irrelevant, but, if it were, the error in its admission would not justify the reversal of the judgment, for no injury could reasonably have resulted from it.

7. The fifth assignment of error might also be passed as immaterial, even if the exception upon which it is founded were well taken. Under the former ruling of this court, the probate of the will in the Orphans' Court was held to be *prima facie* evidence of its contents and due execution. Although that doctrine has since been denied by the Supreme Court of the United States in *Campbell* v. *Porter*, 162 U. S. 478, the trial was had in accordance with it. In the course of their attack upon this *prima facie* case the plaintiffs called Eugene Morgan, one of the subscribing witnesses to the will. He recognized his signature and those of the two other witnesses, but had no recollection of the actual signing or of acquaintance with testator. He was then asked if, in connection with said witnesses, he had ever witnessed a will outside of the bank; to which, over the objection of the defendant, he answered that he had not. The will had been prepared by a lawyer, who died before the controversy arose, and one of the circumstances in the case was the place of its execution and its custody thereafter. In this view of the case we cannot say that the admission of the evidence was erroneous.

8. The next assignment of error relates to the admission of proof, over the objection of defendant, that an indorsement on the envelope containing the will of the words "property of David Moore" was in the handwriting of James L. Barbour. James L. Barbour was the husband of defendant, and by reason of a contingent interest under the terms of the will, was a defendant also. He died after the first trial and before the second.

David Moore died October 23, 1883, and his will was filed in the office of the Register of Wills on the next day. It was, when presented, contained in the envelope with the indorsement aforesaid.

The knowledge of the existence of the will by said Barbour, and the place of its keeping, were circumstances to be considered on the issue of undue influence. Moreover, the

same facts were pertinent to be considered in connection with the point made upon the long period of time within which the testator might have amended or revoked his will if it had been extorted from him unwillingly, to which reference has been heretofore made. We find no error in the ruling of the court.

9. Nor do we find any reversible error in the exception that is made the foundation of the sixth assignment.

We think it unnecessary to consume time in the inquiry whether the mode of the valuation of the land in controversy, adopted in the cross-examination of one of the defendant's witnesses, was admissible by way of cross-examination; or to consider the true measure of value where that is an important issue in the controversy. Whether the land was valued as farm land strictly, or as suburban land, destined sooner or later to be divided into lots and sold by the square foot instead of by the acre, was, we think, a matter of no particular importance in the case. That it had considerable value at the time of testator's death, was proved by defendant, and whatever its value, it constituted the whole of his estate.

10. The evidence in the case showed that James L. Barbour had collected rents for the testator for a number of years, and had advanced him money from time to time as needed. Defendant offered an account between him and testator, taken from the books of Barbour & Hamilton, showing collections and advances, commencing in December, 1871, and running down to the date of testator's decease. Defendant then offered from the books of Barbour & Hamilton accounts current with John Moore and others to show that the said firm had acted as agents and bankers for friends and customers.

Aside from the technical objection to the proof of book accounts, as such, which we do not pause to consider, we think the court did not err in excluding the evidence on the objection of the plaintiffs. Dealings between Barbour

& Hamilton and other persons could have no such relevancy to the relations between James L. Barbour and his father-in-law, David Moore, as would justify their admission and the probable opening up of collateral inquiries in respect of them.

11. The last two assignments of error may be considered together in the view that we have taken of them. One is on an exception taken to a special instruction given on behalf of the plaintiffs, and the other is founded on the refusal of an instruction asked by the defendant.

Without pausing to consider the verbal criticisms of these special instructions respectively, we think no reversible error can be found in the ruling upon either.

If, in the instruction given for plaintiffs, too much prominence was given to certain facts bearing on the issue of undue influence, still it is not of such a nature as to require reversal of the judgment. *Ormsby* v. *Webb*, 134 U. S. 47, 67.

Turning to the general charge of the court and the nineteen special instructions given at the request of the defendant, we find that the case was given to the jury fully and fairly, and as favorably to the defendant as she could reasonably ask. No injury was done her by the refusal of her twentieth special prayer, for all that was proper in it is to be found in the general charge. And if an erroneous impression might have been made upon the jury by the special prayer of the plaintiffs, if taken by itself, it must necessarily have been corrected by the general charge.

Finding no reversible error in the record, the judgment must be affirmed, with costs; and it is so ordered.

*Affirmed.*