Austin vs. Citizens' Bank and Sheriff.

No. 6954.

S. T. AUSTIN, JR., VS. CITIZENS' BANK AND SHERIFF.

A mortgage creditor may proceed directly against the property subject to his mortgage, even though the property may have been sold for taxes, and the tax title be in the name of a third person, when it appears from the evidence that such title is a fraudulent simulation, and that the original mortgage debtor, who had colluded with the purchaser at the tax sale, is still the real owner of the property.

| 30 | 689 |
| 49 | 791 |
| 30 | 689 |
| 0110 | 179 |
| 30 | 689 |
| 112 | 545 |
| 30 | 689 |
| 120 | 757 |

APPEAL from the Thirteenth Judicial District Court, parish of East Carroll. Hough, J.

J. M. Kennedy and Thomas J. Semmes for plaintiff and appellee.

Armand Pitot for defendants and appellants.

The opinion of the court was delivered by

MANNING, C. J. In February 1872 Jane Austin bought a plantation situated in Carroll parish from the Citizens' Bank for about twenty thousand dollars, of which four thousand dollars was paid in cash or its equivalent, and the residue was on time. A mortgage and the vendor's lien was retained by the Bank, and the purchaser besides assumed the obligations of a previous mortgagor of the same property, and renewed all the stipulations relative to stock notes, pledge, etc. usually made by that Bank in its sales and mortgages. No other payment of any portion of the purchase price was made, and in March 1876 the Bank proceeded to foreclose its mortgage through an order of seizure and sale, when the execution of that process was arrested by an injunction, obtained at the instance of the mortgagor's son. That is the suit now before us.

It appears that Mrs. Austin neglected to pay the taxes on the property, and in January 1875 it was sold by the tax collector and purchased by one C. E. Moss, who procured from the Auditor a confirmation of his tax title in the following November, and in January 1876 sold to the plaintiff in injunction. The petition alleges the plaintiff's ownership by this chain of title, avers that it is valid and bona fide, that he is in no manner bound to pay the debts of Mrs. Austin to the Bank, and that the seizure by the Bank of his property, thus honestly and fairly acquired, to compel the payment of the price which his mother is alone bound to pay, is a hardship and grievance, wantonly inflicted upon him, which he prays may be assuaged by a judgment against the wrong doer for five thousand five hundred dollars as damages.

The Bank answers, that the plaintiff is not the legal and bona fide owner of the property, that he and his mother concocted the scheme, by and through which a nominal title was vested in him, for the purpose of defeating, or attempting to defeat, its mortgage and vendor's rights—that its mortgagor, the mother of the plaintiff, implored time and leniency from the Bank, and even after the tax sale, of which she knew,

44

asked for further delay of the enforcement of the mortgage, without acquainting her creditor with the pretended alienation by a tax sale, and for the purpose of deluding the Bank until that sale should be confirmed by the Auditor—that the plaintiff was the business manager, as well as son, of the mortgagor and debtor, through whose fraud and ill practices, which were participated in by her, the apparent title was acquired by him, which was in fact a simulation, the real title as well as possession remaining in the mortgagor, and Moss being interposed to impart a semblance of reality to the transition of title, who never had possession of the property and never pretended to exercise any control over it.     Further defences are made, resting upon the pledge of the Bank, the relation of the State to it, etc. which need not be detailed.

Moss intervened, alleging that he was the creditor of plaintiff in injunction, and had his vendor's lien and mortgage on the property to secure the payment of the price for which he had made the sale of January 1876, and prayed that the plaintiff be decreed to be the owner of the land subject only to his mortgage.   His intervention is signed by an attorney, bearing the same name as the plaintiff.

The fraud and cozenage of the transaction is manifest at every stage of it. . Mrs. Austin induced the Bank, in personal interviews with its President, to forbear pressing the collection of its debt.   The note maturing in May 1873 had been long overdue, but her solicitations prevailed, and the leniency, touchingly besought, was gracefully and compassionately granted.  The taxes of that year, due in 1874, were left unpaid, and plaintiff told the collector to sell the place for them, and Moss says, that the plaintiff told him just before the tax sale he (plaintiff) wished witness would buy the place, though he adds with artless candor, the plaintiff never told him to buy it for him (the plaintiff) nor for any one else in particular.   And so when it was sold in the following January (1875) Moss bought at $365.   During that year the President of the Bank renewed his demands upon Mrs. Austin for payment in a more peremptory manner than before, and in October, after the purchase by Moss of the plantation, Mrs. Austin writes—"I can only state that now I have no money, not having commenced to gin the crop yet, but I expect to be in the city in Jany. and hope to be able to make satisfactory arrangements then."  Nothing is said about the tax sale.

A few days after this letter was written, the Auditor was applied to for the confirmatory title, and it was made, and Moss who had not taken possession before, obtained a judicial order therefor, and did take possession then according to his own account.   It seems to have been done so quietly that the tenants of the place were not aware of it.   Less than ninety days intervened between the date of the Auditor's title to Moss, and Moss' sale to Austin.   The quantity of land was eighteen hundred

acres. The price of this last sale was six hundred dollars cash, and one thousand dollars in a year.

Moss thinks, but is not certain, that the tax collector himself made the public auction at the tax sale, and adjudicated the property to him, but if mistaken, the deputy did it, and he accounts for the non-production of the requisite number of advertisements of the sale by stating the custom of the collector there to be to make one advertisement by means of a printed slip, called an 'extra' of the local newspaper, but he is not sure that such slip was issued in this case, and it is not produced. The collector, testifying, says he had no communication with Mrs. Austin about the taxes or the sale, but only with her son, the plaintiff, to whom he said, 'if you are not going to pay the taxes, I will sell," and who answered 'go on and sell.'

The statement of the case, and the recapitulation of the evidence, foreshadows our judgment. The plaintiff intrenches himself behind our ruling in Lannes v. Work. Bank, 29 Annual, 112, and insists that his title must be held good until it is annulled in a direct action. But that principle holds good only as to those titles that are *bona fide* and were acquired without fraud, or that are real and not simulated. Unquestionably a purchaser at a tax sale may acquire a good title to a valuable property for a small price, if the requisite formalities have preceded and attended the sale. If the owners of property, and owers of taxes, will now persist in withholding from the government their just and lawful contributions to its support there is a way provided to compel the payment of them by a forced sale. Every country that relies upon legally imposed taxes, instead of forced loans and arbitrary exactions, for its maintenance and sustenance, recognizes and enforces the duty of the owner of property, which is protected, to assist in the support of the government that protects it.

But no government will permit its machinery, constructed to enforce the payment of public dues to the fisc, to be used to manipulate a fraud, and if the purchaser is a party to the fraud, he must share its punishment. It might be very different if he were wholly disconnected and unacquainted with it.

The purchase by Moss was nothing more nor less than a purchase by Mrs. Austin, the debtor and mortgagor, through her son, the plaintiff. The money paid, as the price at the tax sale, was only what she, as owner of the property, owed the State, and what she honestly and in good conscience ought to have paid without, and before, and to prevent a sale. If she could not pay it, the debt being *exigeant* and of so high a rank, she should have acquainted her creditor and mortgagee with its imminence, instead of observing the suspicious reticence which characterized her conduct. The creditor's rights, as mortgagee and vendor,

can not be imperilled by the mortgagor's collusive combination with others to interpose an apparent, but fraudulent obstacle in his way in enforcing those rights.

The injunction was improperly issued, but the defendant omitted to ask for damages. Therefore

It is ordered, adjudged, and decreed that the judgment of the lower court is avoided and reversed, and the injunction sued out by the plaintiff is dissolved, and his cause is dismissed at his costs. It is further decreed that the Citizens' Bank, defendant, recover of the plaintiff the costs in the lower court and the costs of appeal.