(70 South. 76)

No. 21326.

Succession of SCHLUMBRECHT et ux.

(Nov. 2, 1915.)

*(Syllabus by the Court.)*

1. WILLS ⬤⟳282—SUIT TO ANNUL—PLEADING —TESTAMENTARY CAPACITY.

The allegation that a deceased testator was 79 years of age and was afflicted with an incurable malady authorizes no inference of mental or physical incapacity to make a will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 640; Dec. Dig. ⬤⟳282.]

2. WILLS ⬤⟳282—SUIT TO ANNUL—PLEADING —ILLEGALITY OF EXECUTION.

The allegation that others prepared a typewritten instrument from which the testator read his purported will to the notary carries with it no implication of illegality in the making of the will, since it is entirely competent for a testator to dictate his will from an instrument previously prepared by another, under his direction.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 640; Dec. Dig. ⬤⟳282.]

3. WILLS ⬤⟳141 — EXECUTION — VALIDITY — "INTERRUPTION OR TURNING ASIDE."

The parties to the making of a nuncupative will by public act are required to confine themselves to that business until its completion, and are not permitted to interrupt it by, or confuse with it, other acts which are irrelevant to its purpose, and which are intended to take effect inter vivos and during the life of the testator. The requirement in question does not, however, deprive the testator of the right to dictate his will with such amplification, whether relevant or irrelevant, as he may see fit, and, whatever may be said of the matter dictated by him (provided it be not in the nature of an act to take effect inter vivos), it is not open to the objection that it is (within the meaning of Civ. Code, art. 1578) "an interruption or turning aside to other acts."

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 353; Dec. Dig. ⬤⟳141.]

4. WILLS ⬤⟳155, 164 — SUIT TO ANNUL — PROOF—FRAUD AND ILLEGALITY—"SUGGESTION"—"CAPTATION."

The words "suggestion" and "captation," as used in C. C. 1492, which declares that "proof is not admitted of the disposition [contained in a will] having been made through hatred, anger, suggestion or captation," include within their meaning all manner of representation and all manner of mental or moral duress or influence, whether accompanied by fraudulent practices or otherwise, which may have preceded the making of the will and may be alleged to have influenced the dispositions therein contained, but it is not the purpose of the article quoted to exclude evidence of fraud or illegality in the actual making of a nuncupative will by public act.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 375–381, 403–414; Dec. Dig. ⬤⟳155, 164.

For other definitions, see Words and Phrases, First and Second Series, Suggest.]

5. WILLS ⬤⟳282 — SUIT TO ANNUL — PLEADING.

Allegations which, under the law, are not susceptible of proof, disclose no cause of action.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 640; Dec. Dig. ⬤⟳282.]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

In the matter of the succession of Capt. John Schlumbrecht and his wife, Mary Condley. Suit by Mrs. Elizabeth Schlumbrecht, wife of James C. Peyton, and another, to annul the will of Capt. John Schlumbrecht, deceased, and for other relief, against John Francis Roth. From a judgment for defendant, plaintiffs appeal. Affirmed.

Frank S. Drolla, Moses C. Scharff, and Guion, Lambremont & Hebert, all of New Orleans, for appellants. Ker & Feliu, of New Orleans, for appellee.

Statement of the Case.

MONROE, C. J. It appears from the face of the record that Mrs. Schlumbrecht died intestate in 1906, and that her husband died in January, 1915, leaving what purports to be

a nuncupative will, by public act, wherein his grandson, John Francis Roth, is named as executor; that the successions were opened by Roth, who obtained an order for the registry and execution of the will, for the issuance of letters testamentary, for the publication of his application for letters of administration upon the succession of Mrs. Schlumbrecht, and for the taking of an inventory; that the letters testamentary were accordingly issued, and the application for administration published, and that thereupon Mrs. Elizabeth Schlumbrecht, wife of James C. Peyton, and Mrs. Catherine Schlumbrecht, wife of Frank S. Drolla, brought this suit, praying that the will in question be annulled, the letters testamentary recalled, and the administration of both successions intrusted to them.

They allege that:

They, together with Mrs. Anne Schlumbrecht, wife of John Roth (and mother of John Francis Roth), are the daughters and heirs of the decedents; that "the will is not a nuncupative will by public act," and that the order directing its registry and execution should be set aside; "that, if said will * * * does evidence a nuncupative will by public act, * * * then said will is null, * * * for the following reasons, among others, to wit:

"Because there were four interruptions in the making of said will, and four turnings aside to other things, as follows, to wit:

"(a) When Capt. John Schlumbrecht began the reading of his will to the notary, he called off the names of two of his daughters as twins, whereupon he was interrupted with the statement that the two daughters named were not twins, but the twins were two others, whose names * * * were then furnished to the testator by * * * one of the heirs who was called into the room, * * * who corrected the testator and caused him to change his will from what had first been dictated by him.

"(b) That Capt. John Schlumbrecht dictated to the notary the following clause, which was inserted in said will, viz.: 'Some time prior to my wife's death, I sold to my son-in-law, John Roth, the real estate known as 836 Clouet and 3054 Burgundy streets, as per acts passed before F. D. Charbonnet, notary. No. 836 Clouet street was sold with the understanding that the seller should have the usufruct during his life. I wish to state that those were bona fide sales and I received the price stated in said sales.' That said clause is a matter inter vivos, foreign to dispositions mortis causa, and having noth-ing to do with the formalities of a will, and constituted an interruption and turning aside to other things.

"(c) That Captain John Schlumbrecht dictated a clause to the effect that, after his burial in St. Roque's Cemetery, he wanted his tomb to remain closed for 25 years; that thereupon a discussion arose between the testator, the witnesses, and others gathered in the room, the result of which was to have the testator change his will in this particular from 25 to 5 years, all of which constituted a turning aside to other things, which influenced the testator and defeated his first expressed will and wish.

"(d) That during the making of the will and before the testator had ceased his dictation of his wishes the notary stated to him that it was customary to appoint an attorney to represent the succession, whereupon, before the testator could make answer, John Francis Roth, named in the will as executor, stated that it was useless to do that; he would attend to that—all of which constituted an interruption and turning aside to other things."

It is further alleged that:

The testator "was 79 years of age, and was an invalid, afflicted with an incurable malady, at the time said will was made; that others prepared a typewritten copy from which he read his purported will to the notary; that John Francis Roth, named executor, and other members of the family, procured the making of said will by fraud, false representations, duress and undue influence, in order to protect themselves in certain advantages they had illegally secured from Capt. John Schlumbrecht, as follows, to wit."

And then follow specific recitals to the effect that:

In January, 1906, the decedent made a simulated transfer of certain property on Clouet street to John Roth, his son-in-law, for $1,500; "that said property was fully worth $3,500 at said date, and no consideration was paid therefor;" that in July, 1906, he made a simulated transfer of property on Burgundy street, to said John Roth for $800, and "that said property was fully worth $2,000 at said date, and no consideration was paid therefor"; that shortly before his death he sold his ice business, including a horse and wagon, to John Francis Roth, for $200, and "that said property was easily worth $1,000 at said date, and no consideration was paid therefor"; and "that there were other simulated transfers, which petitioners will show in the trial of the case, of bank stocks and other property, from the deceased to the Roth family."

"And petitioners now allege that all of said simulated transfers were made to the Roth family, as was the will which the Roth family procured, by fraud, duress, and misrepresentation, and the making of the will in this way was

finally procured in order to validate said transfers and to place the succession in the hands of the said John Francis Roth, as executor, and thereby prevent any attack on said transfers; that it will be necessary to bring suit in the name of the succession of Capt. John Schlumbrecht and his wife, Mary Condley, to set aside said transfers, and John Francis Roth, interested in, and a beneficiary of, said transfers, is not a proper person to represent these successions; that the confirmation of John Francis Roth as executor should be recalled and set aside," etc.

The petitioners also filed an opposition to the application of Roth to be appointed administrator of the succession of Mrs. Schlumbrecht. The defendant, Roth, by way of exception, averred that the petition discloses no cause of action, and that the mere allegation by counsel that Mrs. Peyton was authorized by her husband was insufficient to show the authorization of that lady.

Mrs. Anne Roth also filed an opposition, in which she alleges that, if the application of John Francis Roth should be denied, the administration of the two successions should be awarded to her, but that both successions are valued at but $6,500, and that the appointment of an administrator other than said John Francis Roth would involve unnecessary expense.

The exception of no cause of action was maintained, and Mesdames Peyton and Drolla prosecute the appeal.

### Opinion.

1. The exception to the authority of Mrs. Peyton to bring the suit was not acted on by the lower court, and is not urged here. It will not, therefore, be considered.

[1] 2. The allegation that the decedent, Capt. John Schlumbrecht, was 79 years of age, and was afflicted with an incurable malady, authorizes no inference of mental or physical incapacity to make a will, and it is nowhere alleged that he was mentally or physically incapable of making the will which is here attacked.

[2] 3. The allegation that "others prepared a typewritten instrument from which he read his purported will to the notary" carries with it no implication of illegality in the making of the will. This court has upon several occasions held that a testator may dictate his will from an instrument previously prepared by another, under his direction. Godden v. Executor of Burke, 35 La. Ann. 179; Succession of McDermott, 136 La. 80, 66 South. 546.

[3] 4. The specifications relied on as supporting the allegation that the will is null, because there were four interruptions and turnings aside to other things whilst it was being executed, do not furnish that support. The law declares that the formalities required in the making of a nuncupative will by public act "must be fulfilled at one time, without interruption or turning aside to other acts" (C. C. art. 1578), which means that the parties to the making of such a will are required to confine themselves to that business until its completion, and are not to interrupt or confuse with it other acts of business which are irrelevant to its purpose and which are to take effect inter vivos and during the life of the testator. This requirement does not, however, deprive the testator of the right to dictate his will with such amplification, relevant or irrelevant, as he may see fit, and, whatever else may be said of the matter dictated by him (provided it be not in the nature of an act inter vivos to take effect during his life), it is not open to the objection that it is, within the meaning of C. C. art. 1578, an interruption or turning aside to other acts. Counsel for plaintiffs have themselves adopted the following interpretation (approved by this court in Starr's v. Mason's Ex'r, 32 La. Ann. 12) of the word "acts," as used in the article 1578, above quoted, to wit:

"Par le mot actes, sans divertir à d'autres actes, on entend affaires, negotia. On peut don-

ner au testateur malade un breuvage, le panser, s'il est blessé; mais on ne porrait pas interrompre ces formalités pour passer un bail, une vente, une procuration, ou même pour écrire une lettre."

In the instant case the conversation or discussion between the testator and others who were present as to whether two of his daughters whom he had mentioned as twins were, in fact, twins, whether he should declare in his will that he desired his tomb to remain closed for 25 years, or 5 years, after his death, and whether he should name an attorney to take charge of his succession, or leave that matter to his executor, were all strictly germane to the making of the will; and so also was the testator's own declaration to the effect that the conveyances which he had made of certain pieces of property formerly owned by him, or by the community, were bona fide, though whether it was so or not is immaterial, since it was made by him of his own motion, and was no more an "interruption" than would have been the expression of a hope of salvation. What effect, if any, is to be given to the declaration is a question which we are not now called on to determine. In the matter of the Succession of Dough, 5 Rob. 503, to which we are referred by plaintiffs' counsel, it was said by the court, concerning the instrument which was there set up as a nuncupative will by public act:

"The instrument * * * appears to have been executed exclusively in relation to matters inter vivos. It contains no disposition causa mortis, except that after the stipulation that the powers conferred shall not be revoked by death or otherwise, and that the claims therein secured by mortgage shall not be enforced during the life time of the debtor, said debtor appoints his mortgage creditor and attorney in fact the testamentary executor of his estate. * * * Here the act itself shows that between the written declaration of the notary that 'the act was executed as dictated,' etc., and the subsequent declaration, that 'it was done without interruption,' etc., and the signatures of the parties and witnesses, the judge and the parties turned aside to another act, that is to say, to a matter inter vivos, entirely foreign to dispositions causa mortis. This matter or stipulation relat-

ed to the exoneration of the judge from all liability resulting from his not producing the certificate required by law in the execution of acts of mortgage. This had clearly nothing to do with the formalities of the will; * * * they were interrupted, and were only continued after the subject-matter of the stipulation had been provided for, agreed on between the parties, and written by the judge in conformity to their agreement."

It will readily be seen that the case thus cited has but a negative, or an adverse, bearing upon the plaintiffs' contention.

[4] 5. Our law declares that:

"Proof is not admitted of the disposition [contained in a will] having been made through hatred, anger, suggestion, or captation." C. C. art. 1492.

Plaintiffs herein allege (as we have stated):

"That John Francis Roth, named executor, and others of the family, procured the making of said will by fraud, false representation, duress, and undue influence, in order to protect themselves in certain advantages which they had illegally secured from Captain John Schlumbrecht, as follows, to wit."

And then follows the specification of the alleged simulated conveyances of property to John Roth and John Francis Roth.

The question of the interpretation which should be given to the article of the Code above quoted was exhaustively considered in the case of Zerega et al. v. Percival, 46 La. Ann. 590, 15 South. 476, and from the opinion of this court, adopting, in part, that of the able judge of the district court, we make the following excerpt, to wit (46 La. Ann. 605, 606, 610, 15 South. 480):

"The second ground of exception is that no evidence is admissible under the allegations of plaintiffs' petition, which are of the following tenor and effect, to wit:

" 'That said Mrs. Percival was fraudulently prevailed upon and coerced by the defendant to leave him her said estate, under fear of threats and violence, and in her weak condition of health she was subjected to constant surveillance and restraint, up to her last moments, to such an extent as to deprive her of and destroy her testamentary capacity,' etc.—the objection being that the charge of the petition is that of captation and suggestion, which is barred under provisions of the Code.

"The Code declares that 'proof is not admitted of the disposition having been made through

hatred, anger, suggestion or captation'; * * * and the argument of defendants' counsel is that the allegation that the testatrix' testamentary capacity was destroyed by the persuasive power and coercion of the defendant, and by the constant surveillance and importunities of the defendant, up to her last moment, is, in effect, a change of suggestion and captation in the sense of that article. The learned judge of the district court, in the course of his examination of the case, gave due attention to this question, and in his reasons for judgment employed the following language, which we adopt as our own, as the views expressed are both clear and forcible, viz.:

" 'Is undue influence a cause of nullity of testaments? Undue influence is an expression unfamiliar to civilians. It is borrowed from a system of laws not prevalent in Louisiana, and it is there used in the same sense as captation and suggestion in the civil law. Schuler on Wills, pp. 230, 231, § 227. When therefore, plaintiffs in their petition allege undue influence, they must be understood as alleging captation and suggestion. Captation has been defined as the act of one who succeeds in controlling the will of another so as to become master of it. * * * Suggestion is often used as a synonym for captation, but it is applied specially to those means of persuasion employed to alter the will of a testator and to prompt him to make a disposition different from that which he had in view, Bouvier's Law Dictionary, verbo, Captation; Furgole, vol. 1, p. 131.' " * * *

46 La. Ann. 610, 15 South. 482:

"It thus appears that article 1492 was not taken from the Code Napoléon. It is a literatim translation of the article contained in the projet of Tronchet and his colleagues. It was borrowed therefrom. It was first inserted in the [La.] Code of 1808, known as the Old Code. At the time that Code was adopted, March 31, 1808, the Code Napoléon, then called the Civil Code of France, had been in force for more than four years, and the makers of our Code had had the benefit of the debates which preceded the enactment of its prototype in the French Council of State and legislative body, so that, when our legislators embodied in the Old Code the provision that 'proof is not admitted of captation and suggestion,' they must be held to have done just what Tronchet and the other authors of the projet desired, and what the French lawmakers declined to do; i. e., close the temple of justice against all suits of nullity for cause of captation, whether unaccompanied or coupled with fraudulent practices. " * * * Our state reports, be it said to the credit and honor of our people, and in proof of the wisdom of our lawgivers, are almost barren of cases of this description. The only two to which I have been referred, 9 La. 469, and 35 La. Ann. 163, appear to be in accord with the views here expressed."

Commenting upon the opinion thus quoted, this court proceeds to say:

"Following the course of the judge's argument, we find it fortified both by the history of the article under consideration and by the two decisions to which he refers."

The doctrine announced by the district court was therefore adopted, or affirmed, by this court, and is, in effect, that "suggestion" and "captation," as those words are used in C. C. art. 1492, include undue influence, and mean "captation, whether unaccompanied or coupled with fraudulent practices," which interpretation, in turn, includes all manner of representation and all manner of mental or moral duress or influence. Proceeding with its opinion, this court comments upon the two cases referred to by the district court, Chardon's Heirs v. Bongue, 9 La. 458, and Godden v. Executors of Burke, 35 La. Ann. 160, and quotes from the original opinion in the case last mentioned to the effect that article 1492 of our Code was not intended "to prevent the admission of proof to establish the circumstances which transpire at the making of an authentic will, under charges tending to the nullity of the act for want of compliance with the exigencies of the law," but that "the prohibition embodied in that article against the admissibility of proof was intended to apply only to facts arisen prior to the making of the will, and to close the door effectually against inquiries into the motives which animated the testator in disposing of his property." And that view appears to have been adopted for the purposes of the case then before the court, though it was held that plaintiffs had alleged no "undue influence" brought to bear upon the testator "at the time of the making of the will," and hence that the exception of no cause of action was properly sustained. It may be remarked in this connection that the opinion (in Godden v. Executors of Burke) from which the excerpt above mentioned was taken was not the opinion of the court upon the final

decision of the case, a rehearing having been granted and another opinion having been handed down in which the question dealt with in that excerpt is not referred to. However that may be, the conclusion reached by the court in Zerega v. Percival to the effect that "the object of the compilers of the Code was to exclude all evidence of acts, conduct, or motives of the testator antecedent to the making of the will as exercising influence over the testamentary disposition therein contained, but not to prevent the admission of proof of what occurred at the making," has been affirmed in the more recent case of Succession of McDermott, 136 La. 88, 66 South. 546, and we find no reason to question its soundness.

[5] But in the instant case, as in the Percival Case, the allegation upon which plaintiffs found their attack upon the will which we are now considering relate, obviously, to matters which occurred prior to and not at the time of the making of the will, and hence were not susceptible of proof. The exception was therefore properly sustained, and the judgment appealed from is accordingly affirmed.