No. 439

First Circuit

———

KLUMPP v. FONTENOT ET AL.

———

(May 7, 1929. Opinion and Decree.)

———

See 119 So. 66.

N. S. Hoffpauir, of Crowley, attorney for plaintiff, appellant.

W. J. Carmouche, of Crowley, attorney for defendants, appellees.

MOUTON, J. This case was, for want of jurisdiction, transferred by the Supreme Court to this Court, the transfer to be made within thirty days after the judgment of the Supreme Court became final. The judgment transferring the case was rendered by the Supreme Court on November 26, 1928, and became final December 11, 1928. The record should have been transferred here on January 10, 1929, thirty days after the finality of that judgment. It was filed on January 11, 1929, one day after the judgment of the Supreme Court became final.

Appellee moves to dismiss the appeal, contending that it was filed too late.

In Boudreaux v. Boudreaux, 122 La. 433, 47 So. 758, the Court said:

"Where a transcript was filed more than three days after the return day, it must under C. P. article 594 be dismissed on motion."

In Whitney-Central Trust & Savings Bank vs. Greenwood Planting and Mfg. Co., 146 La. 572, 83 So. 834, the same rule was applied.

Under that ruling, it must therefore be held that if the record is filed within three days after the return day, it is filed in time.

It is true that in this case, the appeal was not filed here under the original order fixing the return day by the District Judge, but is transferred to us by judgment from the Supreme Court, wherein the time for its transfer is fixed.

Act No. 19 of 1912, amending Act 56 of 1904, says in reference to the transfer of cases, that the court to which it is transferred, will proceed with them in the same manner as when they have been originally appealed to the proper court.

Since they have to be proceeded with in the same manner, the three days of grace which is granted to appellant in which to file the transcript, dating from the return day originally fixed, must be taken into account in his favor in a case of this character, particularly in consideration of the well established rule which demands that the constitutional right of appeal be liberally construed.

The motion to dismiss is therefore denied.

### ON THE MERITS

Plaintiff alleges that he bought a forty acre tract of land, at tax sale, June 21, 1924, and was placed in possession thereof, August 2, 1927. Two special mortgages, he avers, are on the land which were given by Mrs. Helena Klumpp to the Collins Investment Company, and which in his brief he states had both been recorded in April, 1923. He alleges that these mortgages were automatically cancelled by the adjudication of the land at tax sale; that it has not been redeemed and that more than three years have elapsed since the adjudication. He avers that these mortgages operate as a cloud on his title, and that the Clerk of Court of Acadia refuses to cancel them from the mortgage records of the parish. He accordingly prays that the Clerk of Court be compelled by rule to make the cancellation; that a curator be appointed to John Watts, a non-resident, the then transferee of the mortgage notes Mrs. Helena Klumpp had given on the land to the Collins Investment Company, and that the curator be ruled to show cause why the erasure of the mortgages should not be made.

John Watts, a resident of New York, appeared in the case through W. J. Carmouche, his personal counsel. His answer is substantially that the land was bought by plaintiff for Mrs. Helena Klumpp, his sister; and, that if the sale were otherwise valid, it was null because the bids were chilled at the tax adjudication.

The tract of land, it appears, was worth about $1500, a valuation which is supported by the fact that two mortgages amounting together to over $1100 had been taken on the property by the Collins Investment Company. It was sold for $46.22 at the tax sale, June 21, 1924, and was bought for that amount in the name of plaintiff, who says he purchased it because his sister could not pay the taxes.

Plaintiff, it is shown, owns 200 acres of land. It is possible that he desired to take advantage of the unfortunate circumstances in which his sister was placed, and that his purpose was to acquire as an investment for future speculation. This happens sometimes, but fortunately not usually or frequently. His sister, the record shows, remained in possession after the sale by which plaintiff claims he acquired the property. He says it was rented by him to Mrs. Klumpp for one-fourth of the crop she raised on the land. At first he could not remember how much rent she had paid each year, as he had not kept the exact account. It is rather singular, it seems to us, that a man who was willing to buy land belonging to his sister, worth about $1500 for the paltry sum of $46.22 because she could not pay her taxes, would not have kept an exact account of the yearly rents

due by her. Pressed for an answer on this question of rent, he said, "She gave me for the first year sixty some odd dollars." Again he was forgetful as to the exact amount. For the second year he could not remember, he could not say, but knew it was not much over $60. The third year he received, he says, a portion of the cotton she had made, but he could not say if it was over $25. Plaintiff was certainly indifferent and careless about his rent. He says, however, that he got 60 odd dollars the first year, and over that sum the second. These amounts so received for rent, as claimed by plaintiff, were for one-fourth of the crop. It appears again a little singular that Mrs. Helena Klumpp could pay over $60 for the two years succeeding the tax sale from crops realized on the land, but was entirely unable to pay the sum of $46.22 for the taxes of the year 1923, which preceded the sale.

It also appears that in June, 1925, two years after the tax sale to plaintiff, Mrs. Helena Klumpp while in possession, leased the land for oil drilling operations on a royalty basis of one-eighth of the oil produced on the premises, with an additional cash payment of $25, and for a term of ten years.

Plaintiff says, in reference to this lease, that his sister had not asked him to lease it, and that he did not know she had leased it and that he knew nothing of the $25 she had received. Plaintiff lived at the time a mile and a quarter from where his sister was living, and knew that there had been considerable leasing of lands in the vicinity for oil explorations. All of what he says may be true, but to us seems rather unbelievable. When questioned by his counsel as to whether he knew there were mortgages on the lands when he bought, plaintiff answered that he found out there were mortgages when he came to borrow money on it. On being cross-examined on this subject his answers to direct and clear questions were extremely evasive and he could not be pinned down to a categorical answer. Being pressed again, he finally admitted that he knew when he bought the land that it had been mortgaged to Collins by his sister.

The evidence shows that W. J. Carmouche, who was not then the attorney of John Watts, desired to buy the land at the tax sale. He testifies that Mr. Redlich, a friend, asked him to let him buy the land and to which he consented. He says as well as he could recall, Redlich came to him with plaintiff and told him he had changed his mind about bidding, but asked him not to bid it for himself, but to let plaintiff bid it in because of a mortgage mix-up on the property for which his sister had not received the money and that was the only way to clear up the title. Considering the facts to which we have referred, and other circumstances to which it is not necessary to refer, we are convinced that what is stated by Mr. Carmouche in reference to this tax sale really occurred, and that the land was in reality bought for Mrs. Helena Klumpp, the tax debtor, but in the name of the plaintiff, so as to free it from the mortgages which were resting upon it, such being the result of a tax adjudication (In re Douglas, 41 La. Ann. 765, 6 So. 675; Fitzpatrick vs. Leake, 49 La. Ann. 795, 21 So. 597) when the property is really acquired by the purchaser.

In the case of Austin vs. Citizens' Bank, 30 La. Ann. 689, it appears that Mrs. Jane Austin had bought a plantation from the Citizens' Bank on which she owed a mortgage for part of the purchase price. She allowed the property

to be sold for taxes. It was adjudicated at the tax sale to C. E. Moss, who after obtaining a confirmation of his title by the auditor, sold the plantation to Mrs. Austin's son.

The Court found that the purchase by Moss was nothing more nor less than a purchase by Mrs. Austin, debtor and mortgagor, through her son, the plaintiff.

Here, we find likewise that the purchase by plaintiff was for his sister, Mrs. Helena Klumpp. The purpose of the purchase by Moss and the subsequent transfer to Mrs. Austin's son was to defeat the mortgage rights of the bank. The object here of the purchase by plaintiff was to clear the title of its encumbrances by virtue of the tax sale and thus to defeat the mortgage rights of John Watts, transferee of the mortgages given by the tax debtor to the Collins Investment Company.

In that case, the court took occasion to say that:

"No government will permit its machinery constructed to enforce the payment of public dues to the fisc, to be used to manipulate a fraud and if a purchaser is a party to the fraud, he must share its punishment."

It is true that fraud is never presumed, but it is equally true that it is almost altogether impossible to prove it by direct evidence. Hence, in such cases, it is only by reasonable inferences or deductions as a general rule that it can be established.

The facts and circumstances to which we have hereinabove referred, convince us that the property was allowed to go to a tax sale by the tax debtor to allow plaintiff to purchase it so as to free it from its encumbrances.

Their conduct cannot be logically explained in any other way, and no direct action was necessary to set it aside, as there had been no real sale to plaintiff who was a mere nominal purchaser and was an interposed party. Austin vs. Citizens Bank, 30 La. Ann. 689.

Plaintiff urges the plea of prescription of three years. In his petition, he alleges that he was placed in possession by the Sheriff on August 2, 1927. The tax sale was recorded, according to his allegations, on June 26, 1924. The proof shows also that Mrs. Helena Klumpp, the tax debtor always remained in actual possession after the tax sale. From plaintiff's own allegations, and the proof which shows the possession of the tax debtor, there is therefore no basis to support his plea of prescription. Carey vs. Cagney, 109 La. 77, 33 So. 89; Baldwin Lbr. Co. vs. Dalferes, 138 La. 507, 70 So. 493.

But if it can be considered that he had bought for himself, his acquisition was certainly in bad faith as his purpose in buying was to defeat the mortgage rights of a creditor. Such a fraudulent transaction cannot serve as a basis for prescription. Gidden vs. Mobley, 37 La. Ann. 417; Hirst vs. Xeter Realty, 138 La. 398, 70 So. 339.

No government, says the Court in Austin vs. Citizens Bank, 30 La. Ann. 689, will permit its machinery constructed to enforce the payment of public dues to the fisc, to be used to manipulate a fraud.

It is inconceivable that it would strike with nullity a transaction resulting from such manipulation, and then lend its aid by way of prescription to give legal life to such an act.

The demand of the plaintiff was properly rejected and the tax sale ordered cancelled from the public records.