## LOCKWOOD v. CHRISTAKOS.
### No. 10316.

United States Court of Appeals.
District of Columbia Circuit.

Argued Feb. 14, 1950.

Decided April 10, 1950.

Mr. Stephen G. Ingham, Washington, D. C., with whom Mr. William E. Furey, Washington, D. C., was on the brief, for appellant.

Mr. S. J. Pokrass, Washington, D. C., with whom Mr. M. S. Mazzuchi, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, CLARK and FAHY, Circuit Judges.

CLARK, Circuit Judge.

The appellant, plaintiff below, perfected this appeal from a judgment rendered at the close of her case dismissing the complaint. The cause of action arose out of a transaction in which the defendant below sold to the plaintiff a sandwich shop business. The plaintiff sought relief in the lower court on the ground that she had been induced to enter into the contract because of certain false representations of material facts on which she, a woman with no business experience,[1] relied to her detriment. The representations which the plaintiff claims were false were made in certain newspaper advertisements and were orally affirmed by the broker-agent of the defendant in regard to the daily volume of business and the monthly net profits. She first became interested in the business as the result of an advertisement placed in the Evening Star newspaper by the aforesaid agent on the 4th of December, 1947. This ad represented the owner as quoting "$250 daily and netting $2,000 monthly". It stated that the reason for selling was "ill health", and the price was $25,000. Thereafter, on the 18th of January, 1948, and on the 4th of March, 1948, advertisements making similar representations were placed in the Evening Star. Immediately after the appearance of the first ad the plaintiff contacted the agent and he confirmed the information contained therein. As a result of these representations she went out to the place of business sometime early in January. Although she made an appointment with the defendant's husband to be shown around, on arrival she was told that it was a very busy time of day and it would not be convenient for her to see the premises. After this visit she called the broker and told him she "thought it was a very good business, but they were asking too

much for it." The daily volume and monthly net profit figures were again discussed.

After the appearance of the second ad in the Evening Star, the plaintiff had another telephone conversation with the defendant's agent, and he again reaffirmed the representations already mentioned. Subsequent to that conversation the plaintiff revisited the premises, but this time the defendant was not there so she was again unable to inspect the place or see the books.

Thereafter, on March 4, 1948, the agent called the plaintiff and told her that he had a "rock bottom price" of $20,000; that he was going to place an advertisement to that effect in the Evening Star that day; and that he was calling her to give her "first chance" before the ad was inserted. The testimony is not clear on the point, but it appears that, although she did not read the March 4 ad in the Evening Star until some time later, it was read to her either over the phone or at the agent's office. In any event the same representations as had heretofore been made were reiterated, and as a result of the lower price she then decided to make the purchase, entering into a contract for the sale of the business that day. The formal consummation of the bargain took place on the 19th of March when the bill of sale was executed. The plaintiff took possession the next day and started to run the business. No public notice of the change in management was made. The same help as were employed by the defendant were retained, and on the first day of operations the defendant herself was present to help out and familiarize the plaintiff with the business.

The plaintiff operated the business for eight consecutive days between March 20th and March 27th. During this period the average daily sales amounted to $132.45, and so, being dissatisfied with the bargain as not meeting the representations, the plaintiff closed down the shop and locked the door. After notifying the defendant that she was dissatisfied, she made tender back but the defendant refused to accept it. Thereupon the complaint in the instant

1. The court found "that the plaintiff was not an experienced business woman; she invested money in a business with which she was not familiar * * *."

action was filed on March 28, 1948. At trial evidence was adduced which showed that during the month of December the average daily volume of the business never exceeded $140. It was further shown that this figure represented a relative norm for the defendant's operation prior to January 1, 1948. During the months of January, February, and into March when the business changed hands it was demonstrated by the defendant's books that the average daily volume of business came to between $240 and $250 per day.

On the basis of the foregoing facts the court made the following findings:

"The Court finds as a fact that there were no misrepresentations made as charged in the complaint and in the pretrial memorandum. The average gross sales per day in the months of January, February, and March, amounted to $240, or more. True, they were less prior to January 1, 1948. But it can hardly be said that the advertisement of March 4, 1948, contained a misrepresentation, if the daily sales averaged $240 or $250 a day in January and February, 1948, as appears to have been the fact.

\* \* \* \* \* \*

"\* \* \* The plaintiff has impressed herself on the Court as a sincere and truthtelling individual; but the Court, while accepting her testimony, believes that there is no sufficient proof, as the Court has indicated, that the representations made were false."

Later on the court made the following statement in elaborating on its finding that no representations were made as charged. "In this case I made a finding, as you will recall, that the plaintiff has failed to prove fraud. I might amplify my ruling by adding this observation: Under the authorities of this jurisdiction, a person charging fraud has the burden of proving fraud not merely by a preponderance of the evidence but by clear and convincing evidence. The plaintiff has not sustained the burden of proof resting on her."

Under ordinary circumstances we might be inclined to disagree with the learned judge below in applying this rule as to proving fraud in a case of this kind where the complaint seeks relief in equity by way of rescission for misrepresentations. There can be no doubt at this time that rescission may be had on account of innocent misrepresentations of material facts on which the party seeking relief relied to his detriment.[2] In the instant case, however, the plaintiff was confronted with the problem of vitiating the effect of a clause in the bill of sale by which she warranted that no representations of any kind were made to her and that she relied on her own independent investigation. The authorities are equally clear, in such cases, that the party seeking relief from the effect of such a clause must show fraud in the inducement or execution.[3] The elements which constitute such fraud in this jurisdiction were set out by Judge Stephens in Public Motor Service v. Standard Oil Co. of New Jersey, 1938, 69 App.D.C. 89, 91, 99 F.2d 124, 126, where he said: "The rule is settled that in an action at law where the issue is fraud the party relying upon fraud must show that the misrepresentations asserted were made either with knowledge of their untruth or in reckless disregard of the truth."

He further stated: "It is settled also that fraud must be shown by clear and convincing evidence."

The court below was correct therefore in requiring proof of fraud; and of course it was correct in requiring that it be proved by clear and convincing evidence. It is our opinion, however, that the learned judge erred in giving proper effect to these

2. Turner v. Brewer, 1924, 54 App.D.C. 363, 298 F. 685; Williston, Contracts, § 1500 (Rev.ed.1936).

3. Bruffy v. Baker, 1938, 69 App.D.C. 266, 100 F.2d 439; New York Life Ins. Co. v. Gay, 6 Cir., 1929, 36 F.2d 634, 638; Strand v. Griffith, 8 Cir., 1899, 97 F. 854, 858; Hubert v. Apostoloff, D.C. 1929, 278 F. 673, 676; Standard Motor Co. v. Peltzer, 1925, 147 Md. 509, 128 A. 451; Bridger v. Goldsmith, 1894, 143 N.Y. 424, 38 N.E. 458; Williston, Contracts, §§ 634, 811, 811A (Rev.ed. 1936); Williston, Sales, § 215 (Rev. ed.1948); Annotation, 56 A.L.R. 56, 57; Annotation, 61 A.L.R. 542.

advertisements. We think that they connote the existence of a continuing operation as per the representations. In other words when the plaintiff read those ads in the newspaper, it was reasonable for her to expect that here was a business that had been doing a daily volume of $240 and netting $2,000 monthly over a period of time in the past, that it was doing it in the present, and that it would, within reasonable limits, continue to do so in the future. Under these circumstances, in light of its sudden subsequent drop on the very day that plaintiff took over the business, the daily volume of the business prior to the appearance of the advertisements became a very material element. And since it appeared that prior to January 1, 1948, the average daily volume never exceeded $140 despite the fact that in December the business was advertised as doing $250 daily, it became incumbent on the lower court to consider whether or not such misrepresentations were made with such a reckless disregard for the truth as to constitute fraud within the meaning of the rule laid down in Public Motor Service v. Standard Oil Co. of New Jersey, supra. The judge below only considered the representations contained in the March 4 ad as the inducement to the bargain. Thus, he reasoned, since defendant's books showed that the business did a daily volume of between $240 and $250 during January, February, and March, the requirements of a continuing operation were reasonably satisfied. By considering the ads in this light he completely cut himself off from an examination of the daily volume of the business in the months preceding the appearance of the first one. But inasmuch as we think that these advertisements amounted to a series of continuing representations constituting only one inducement, it can hardly be said that the one of December 4 was any less of an enticement to buy than the one of March 4. It is our opinion that the December 4 ad was also a part of the inducement, and therefore the court below should have considered the disparity between the actual facts and the representations that existed prior to January 1 in making its decision on the question of fraud. Since this was not done the case should be reversed and remanded for a new trial.

Reversed and remanded.

FAHY, Circuit Judge, concurs in the result.