**BARONE v. WILLIAMS et al.**

No. 11230.

United States Court of Appeals District of Columbia Circuit.

Argued March 20, 1952.

Decided July 17, 1952.

Mr. William E. Stewart, Jr., Washington, D. C., with whom Mr. Richard W. Galiher, Washington, D. C., was on the brief, for appellant.

Messrs. Claude L. Dawson and Greene Chandler Furman, Washington, D. C., for appellee Harold B. Williams.

Messrs. Charles M. Irelan, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., entered appearances for appellee United States of America.

Before PRETTYMAN, PROCTOR and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Reuben J. Williams, a veteran of World War II, took out while in the service and thereafter kept in force a National Service Life Insurance policy in the amount of $10,000. Prior to May 26, 1947, Harold B. Williams, plaintiff below and half-brother of Reuben, was the beneficiary under this policy. On May 26, 1947, Reuben executed a change in beneficiary, designating Katie Ludwig, an appellee, who is Reuben's aunt, and Juanita Barone, appellant, in the amount of $5,000 each. On August 26, 1947, Reuben executed still another change, this time designating Juanita Barone as sole beneficiary.

Appellee Harold B. Williams brought this action in the District Court against the United States to recover the amount of the policy. The complaint alleged that the changes were obtained by fraud, deceit, and undue influence, and consequently that appellee Williams continued to be the beneficiary. At the instance of the United States Katie Ludwig and Juanita Barone were made parties defendant.[1]

After trial the jury returned a special verdict finding that the changes in beneficiary of August 26, 1947, and May 26, 1947, were procured by fraud or undue influence. Judgment was accordingly entered for appellee Williams for the full amount of the policy. This appeal by appellant Barone followed.

■ *First.* A review of the record convinces us there was substantial evidence to support the verdict. The jury could reasonably have concluded as follows:[2] Reuben was an apprehensive, high-strung individual who took unusual care of himself. He had lived practically all his life with Mrs. Ben Williams, an aunt, who raised him after his mother's death when he was a small child. Appellee Harold Williams, who was also raised in the same home, had been ill and unable to work for much of his life. For this reason Reuben prior to his own illness had wanted his insurance to go to Harold. Reuben was hospitalized several times during the course of the illness from which he died. In 1946, one of his kidneys was removed and in 1947 the other kidney was found to be affected. Appellant Barone was his private duty nurse during his hospitalization in March, 1946, and thereafter she nursed him in the home of Mrs. Ben Williams. In March, 1947, Reuben was again in the hospital with appellant as his nurse. Upon discharge this time Reuben went to the home of Katie Ludwig, and while there also was nursed by appellant. It was at Mrs. Ludwig's he executed the first change in beneficiary. He had requested his family to gather his possessions together, indicating he had no desire to return to the home of Mrs. Williams. Appel-

---

1. (a) " * * * All persons having or claiming to have an interest in such insurance may be made parties to such suit, and such as are not inhabitants of or found within the district in which suit is brought may be brought in by order of the court to be served personally or by publication or in such other reasonable manner as the court may direct. * * * " 43 Stat. 612 (1924), as amended, 38 U.S.C.A. § 445.

(b) No appearance was entered in the court below for Mrs. Ludwig; default judgment was entered against her.

2. The events now to be related occurred in New Orleans, Louisiana.

lant Barone knew for some time prior to Reuben's death that he was suffering from an incurable cancer and could not recover. Beginning with the hospitalization in March, 1946, Reuben was given narcotics to relieve his pain. There was evidence that a few weeks after the last change in beneficiary it was difficult for him to converse, his mind would wander off, he had no interest in anything, did not seem to know what he was talking about at times, had no recollection one minute of what he had said just previously, and would pass out in the midst of a conversation and then regain consciousness. Appellant was authorized to and did in fact give Reuben narcotics during this period. There was evidence he thought, with her encouragement, that he was treated badly by his family and that she dissuaded an aunt from visiting him. Reuben turned over to appellant approximately $2200, representing a considerable part of his liquid assets. This was not in payment of a debt. Appellant was almost always nearby when Reuben's relatives visited him.

From all this and other evidence the jury could reasonably and honestly have concluded that appellant exercised such undue influence as to make voidable the changes in beneficiaries. The jury need not have reached this conclusion. The evidence was in part conflicting and the jury could have absolved appellant. But the decision was for them and we must not disturb it, resting as it does upon evidence which affords adequate support for the ultimate inference drawn. See McCartney v. Holmquist, 1939, 70 App.D.C. 334, 106 F.2d 855, 126 A.L.R. 375; Sorrels v. Alexander, 1944, 79 U.S.App.D.C. 112, 142 F.2d 769.

"Undue influence, too, is nearly always a matter of inference from facts and circumstances disclosed by the evidence of the conditions and surroundings of the parties, and cannot, in its legal sense, be defined and applied in one case so as to present an accurate measure for the determination of another. Conley v. Nailor, 118 U.S. 127, 133 [6 S.Ct. 1001, 30 L.Ed. 112]."

Barbour v. Moore, 1897, 10 App.D.C. 30, 46, dismissed, 1897, 18 S.Ct. 939, 42 L.Ed. 1211. See, also, 17 Am.Jur., Duress and Undue Influence, § 43.

■ *Second.* (a) Appellant, relying upon Louisiana law (see n. 2, supra) as to the burden of proof, argues that fraud must be established by more than a mere preponderance of the evidence.[3] But it was at appellant's own request the trial court instructed the jury that a preponderance of evidence was needed to establish undue influence. She cannot now complain that this was done. Rule 51, Fed.R.Civ.P., 28 U.S.C.A.

■ (b) Again relying upon Louisiana law appellant says that proof of undue influence is limited to the time and place of the act alleged to have resulted from such influence. The argument is predicated on Article 1492, Louisiana Statutes Annotated–Civil Code (1945),[4] and interpretations thereof by Louisiana courts. This Article is found in the chapter of the Code which relates to the capacity necessary for disposing of and receiving gifts inter vivos and causa mortis. Nominally it relates to exclusion of evidence, but Louisiana courts indicate that the principle is a substantive rule of law. If so, Louisiana law would control. See 3 Beale, Conflict of Laws, 1599 et seq. (1935); Restatement, Conflict of Laws, 699 et seq. Assuming *arguendo* that Article 1492 is substantive and therefore would control if the case involved a gift inter vivos or causa mortis, or were a will case,[5] Siz–

3. As to the requirements for proof of fraud in this jurisdiction, see Lockwood v. Christakos, 1950, 86 U.S.App.D.C. 323, 181 F.2d 805; Public Motor Service v. Standard Oil Co. of New Jersey, 1938, 69 App.D.C. 89, 99 F.2d 124.

4. "Proof is not admitted of the dispositions having been made through hatred, anger, suggestion or captation." Article 1492, Louisiana Statutes Annotated–Civil Code (1945). The Louisiana Revised Statutes of 1950 did not repeal this provision. See 5 Annotations to Louisiana Statutes 1950, p. 227 (Dart, 1951).

5. Succession of Schlumbrecht, 1915, 138 La. 173, 70 So. 76; Zerega v. Percival, 1894, 46 La.Ann. 590, 15 So. 476. A contrary conclusion might be drawn from

eler v. Sizeler, 1930, 170 La. 128, 127 So. 388, indicates that the Civil Code rules as to gifts inter vivos and causa mortis do not apply to life insurance policies.[6] No conflicting Louisiana authority has been cited to the effect that proof of undue influence in designation of an insurance beneficiary is limited to the time and place of designation. Accordingly we find no error in the latitude of proof allowed on the issue.[7]

■ *Third.* It is contended it was error to instruct on fraud, deceit, coercion and duress because counsel for appellee conceded that undue influence was the sole issue and, in any event, such instructions were inapposite. The concession referred to was made but the broader instructions do not constitute reversible error. Fraud, undue influence, coercion, duress, deceit, all were alleged in the complaint. We need not detail the distinctions which ordinarily might be drawn between them.[8] Fraud was generically defined by the court as a species of undue influence. Fraud and deceit were each used to describe the other. Undue influence, duress and coercion were defined so as to be practically identical in their application to the case. Furthermore, the instructions did not make the burden of plaintiff lighter than it would have been had they been phrased only in terms of undue influence.

This court early pointed out in connection with the validity of a will the "great difficulty, if it be at all possible, to mark with clearness the distinction between * * * undue influence * * * and actual fraud." Barbour v. Moore, 1894, 4 App.D.C. 535.[9]

We quoted with approval from the leading English case of Boyse v. Rossborough, 6 Ho.L.Cas. 2, 47, 48, where it is said,

" * * * It is, however, extremely difficult to state in the abstract what acts will constitute undue influence in questions of this nature. It is sufficient to say, that allowing a fair latitude of construction, they must range themselves under one or other of these heads —coercion or fraud. * * * "

Since counsel for appellee conceded that undue influence was the sole issue, the trial court might well have so limited his instructions. But analytical nicety in this respect was not essential to the fairness of the instructions as a whole, especially as those given in broader terms did not advantage the plaintiff. Upon a review of the evidence and the relation of the instructions thereto, we think no prejudicial error occurred. The jury we think was well apprized that the issue, though phrased in varying language, was whether appellant or Katie Ludwig, or both, so influenced and affected the judgment of Reuben as to destroy his free agency in the sense of undue influence.

We have examined other points raised and find them not to be meritorious.

Affirmed.

PRETTYMAN, Circuit Judge (dissenting).

I cannot find in this record the evidence which my brethren find supporting the allegation of undue influence. I must, therefore, dissent from the judgment.

---

Succession of Jones, 1907, 120 La. 986, 45 So. 965; Klumpp v. Fontenot, 1929, 11 La.App. 27, 122 So. 503; Succession of Yeates, 1948, 213 La. 541, 35 So.2d 210.

6. See Louisiana Statutes. Annotated–Revised Statutes of 1950, Title 22: § 1521.

7. (a) Nothing in Priebe & Sons v. United States, 1947, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32, and cases there cited is to the contrary.

(b) For the rule in the District of Columbia which obtains concerning latitude of proof on undue influence, see Barbour v. Moore, supra, 10 App.D.C.

at pages 45–46; Duckett v. Duckett, 1943, 77 U.S.App.D.C. 303, 134 F.2d 527.

8. See 17 Am.Jur., Duress and Undue Influence, §§ 2, 3, 4, 33; 23 Am.Jur., Fraud and Deceit, §§ 2, et seq., particularly § 12.

9. This was a prior appeal in the same case which later was reported in 1897, 10 App.D.C. 30, cited supra. Certain parts of the opinion in 4 App.D.C. 535 were disapproved in Campbell v. Porter, 1896, 162 U.S. 478 at page 489, 16 S.Ct. 871, 40 L.Ed. 1044, but those parts are not pertinent here.